Filed 8/26/22  Gavriiloglou v. Prime Healthcare Management CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ELENI GAVRIILOGLOU, | |
| Plaintiff and Appellant, | E076832 |
| v. | (Super.Ct.No. CIVDS1709515) |
| PRIME HEALTHCARE MANAGEMENT, INC. et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of San Bernardino County.  Donald R. Alvarez, Judge.  Reversed.

Law Offices of Gavril T. Gabriel and Gavril T. Gabriel for Plaintiff and Appellant.

Morgan, Lewis & Bockius, Thomas M. Peterson, Christopher J. Banks, Clifford D. Sethness, and Samson C. Huang for Defendants and Respondents.

Eleni Gavriiloglou brought this action against her former employer and its alleged alter egos.  She asserted, among other things, (1) individual claims for damages based on Labor Code violations and (2) a representative claim for civil penalties for Labor Code

1

violations under the Private Attorneys General Act (Lab. Code, § 2698 et seq.) (PAGA). As Gavriiloglou had signed an arbitration agreement, the trial court compelled her to arbitrate her non-PAGA claims and stayed her PAGA claim while she did. The arbitrator found that the alleged Labor Code violations had not occurred. The trial court then granted judgment on the pleadings against Gavriiloglou on her PAGA claim; it ruled that the arbitrator's findings established that she was not an "aggrieved employee" within the meaning of PAGA, and therefore that she lacked standing to bring a PAGA claim.

Gavriiloglou appeals. She contends that (1) the trial court erred by denying her petition to vacate the arbitration award, and (2) the trial court erred by ruling that the arbitration award barred her PAGA claim.

We will hold that the trial court properly denied the motion to vacate the arbitration award. However, we will also hold that the arbitration did not bar the PAGA claim because Gavriiloglou was acting in different capacities and asserting different rights. Accordingly, we will reverse.

I

STATEMENT OF THE CASE

In her complaint, Gavriiloglou asserted causes of action against Prime Healthcare Management, Inc., Prime Healthcare Management II, Inc., Hospital Business Services, Inc., and Dr. Prem Reddy (collectively Prime):

(1) Under the Labor Code, for:

(a) Failure to provide meal and rest periods (Lab. Code, § 226.7);

2

(b) Failure to pay overtime (Lab. Code, § 510);

(c) Failure to provide all wages due at termination (Lab. Code, § 201);

(d) Waiting time penalties (Lab. Code, § 203);

(e) Failure to produce an employee file (Lab. Code, § 1198.5);

(f) Misclassification as exempt (Lab. Code, § 515);

(g) Retaliation (Lab. Code, § 1102.5); and

(h) PAGA penalties (Lab. Code, § 2698 et seq.);

(2) Under the Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) (FEHA), for:

(a) Discrimination, harassment, and retaliation;

(b) Failure to prevent discrimination, harassment, and retaliation;

(c) Failure to provide reasonable accommodation;

(d) Failure to engage in the good faith interactive process to determine effective reasonable accommodation; and

(e) Wrongful termination in violation of FEHA;

(3) Wrongful termination in violation of public policy; and

(4) Unfair competition (Bus. & Prof. Code, § 17200).

Gavriiloglou had signed an arbitration agreement as a condition of her employment. Thus, Prime filed a motion to compel arbitration of all of her non-PAGA claims and to stay the litigation of her PAGA claim. Over Gavriiloglou's opposition, the trial court granted the motion.

3

The parties selected an arbitrator jointly. After an evidentiary hearing, the arbitrator issued a final award in the favor of Prime. In it, the arbitrator found that the alleged Labor Code violations did not occur.

Prime then filed a motion for judgment on the pleadings on the PAGA claim. It argued that the arbitrator's ruling against Gavriiloglou on her Labor Code claims established, as a matter of issue preclusion, that she was not an "aggrieved employee" (Lab. Code, § 2699, subd. (a)) and therefore she lacked standing to bring a PAGA claim. The trial court granted judgment on the pleadings, without leave to amend. Accordingly, it entered judgment against Gavriiloglou and in favor of Prime.

II

THE MOTION TO VACATE THE ARBITRATION AWARD

Gavriiloglou contends that the trial court erred by denying her petition to vacate the arbitration award.

A. *Additional Factual and Procedural Background*.

Gavriiloglou filed a petition to vacate the arbitration award. She argued that:

(1) The arbitrator had failed to rule on her claim of failure to engage in a good-faith interactive process in violation of FEHA; and

(2) The arbitrator failed to allow her to obtain the testimony of Dr. Prem Reddy, either in a deposition or at the hearing.

The trial court denied the motion.

4

B.    *Discussion.*

"To determine whether an arbitration award should be vacated under Code of Civil Procedure section 1286.2, we review the trial court's decision de novo. [Citation.]" (*Bacall v. Shumway* (2021) 61 Cal.App.5th 950, 957.)

1.    *Failure to decide the good-faith interactive process claim.*

First, Gavriiloglou contends that the arbitrator failed to decide her good-faith interactive process claim.

"Arbitrators are required to decide all questions submitted that are 'necessary' to determine the controversy. [Citation.] [¶] Failure to do so may be ground to vacate the award . . . ." (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2021 update) ¶ 5:498 at p. 5-559; see also Code Civ. Proc., §§ 1283.4, 1286.2, subd. (a)(5); *VVA-TWO, LLC v. Impact Development Group, LLC* (2020) 48 Cal.App.5th 985, 998.) "The award need not, however, set forth findings of fact or a statement of reasons. The award is valid as long as it serves to settle the entire controversy . . . . [Citation.]" (*Severtson v. Williams Construction Co.* (1985) 173 Cal.App.3d 86, 92.)

"[I]t is presumed that all issues submitted for decision have been passed on and resolved, and the burden of proving otherwise is upon the party challenging the award. [Citations.]" (*Rodrigues v. Keller* (1980) 113 Cal.App.3d 838, 842.)

FEHA prohibits an employer from discriminating against or harassing an employee based on, among other protected characteristics, a disability. (Gov. Code,

5

§ 12940, subds. (a), (j).) It requires an employer "to make reasonable accommodation for [a] known . . . disability of an . . . employee." (*Id*., subd. (m)(1).) It also requires an employer, "in response to a request for reasonable accommodation by an employee . . . with a known . . . disability," "to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any . . . ." (*Id*., subd. (n).)

Here, the arbitrator noted that Gavriiloglou had alleged FEHA claims, including "failure to engage in the interactive process . . . ." In a section entitled "Disabilities," she rejected them, in part because she found that "[t]here was no evidence that [Gavriiloglou] requested or needed any workplace accommodations related to her [disability] beyond occasional time off work and the use of the restroom as needed[,] which [Prime] provided."

"Once notified of a disability, the employer's burden is to take positive steps to accommodate the employee's limitations. The employee also retains a duty to cooperate with the employer's effort by explaining his or her disability and qualifications. Reasonable accommodation thus envisions an exchange between employer and employee where each seeks and shares information to achieve the best match between the employee's capabilities and available positions. [Citation.] *If a reasonable accommodation does not work, the employee must notify the employer, who has a duty to provide further accommodation.* [Citation.]" (*Brown v. Los Angeles Unified School District* (2021) 60 Cal.App.5th 1092, 1108, italics added.)

6

Here, then, the arbitrator's finding that Prime provided all of the accommodations that (as far as the evidence showed) Gavriiloglou requested and needed was dispositive of her good-faith interactive process claim.

Gavriiloglou asserts that "a trier of fact's ruling that an employer reasonabl[y] accommodated an employee is not *necessarily* dispositive on the question of whether the employer also satisfied its duty to engage in good faith in the interactive process." (Italics added.) In principle, we agree. (See, e.g., *Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 425-426 [employer was not liable for failure to provide reasonable accommodation, because parties never reached the stage of deciding which accommodation was required, but it could be liable for failure to engage in interactive process].) On the facts of this case, however, as found by the arbitrator, it *was* dispositive.

Gavriiloglou also quotes a portion of her post-hearing reply brief discussing the evidence supposedly proving that Prime failed to engage in the interactive process. We accept this as showing that Gavriiloglou did raise her interactive process claim in the arbitration. If only out of an excess of caution, however, we point out that it does *not* show that there were grounds to vacate the award. "Statements by an attorney, whether made in court or in a brief, are not evidence. [Citations.]" (*Muskan Food & Fuel, Inc. v. City of Fresno* (2021) 69 Cal.App.5th 372, 389-390.) And even if they were, a court cannot vacate an arbitration award based on either "'the merits of the controversy'" or "'the sufficiency of the evidence.'" (*Morris v. Zuckerman* (1968) 69 Cal.2d 686, 691.)

Thus, the trial court properly refused to vacate the award on the theory that the arbitrator had failed to decide Gavriiloglou's interactive process claim.

### 2.    *Inability to call or depose Dr. Prem Reddy*.

Second, Gavriiloglou contends that the arbitrator did not allow her to call or to depose Dr. Prem Reddy.

#### a.    *Additional factual and procedural background*.

In her complaint, Gavriiloglou alleged that her supervisors, Kenneth Wheeler and Sheila Reddy,[1] participated in the alleged FEHA and Labor Code violations. She complained to them about some of the violations. She also complained to Hazel Ganay, a member of the Human Resources staff.

She alleged that Wheeler told her that Dr. Reddy had approved a salary increase and a bonus, neither of which she ever received. Dr. Reddy also asked her to create "'bridge routines' that would allow defendants to bill Medicare/Medi-Cal and other private health insurance companies inflated or inaccurate charges . . . . Plaintiff asked if this practice was illegal and was told by [Dr.] Reddy and Wheeler that this was legal." (Capitalization altered.)[2] Prime terminated her, in part, "in retaliation for [her] refusal to . . . participate in unlawful billing practices . . . ." Also, at one point, she emailed a

---

[1]    Allegedly Sheila Reddy is Dr. Reddy's niece.

[2]    The complaint did not define or describe "bridge routines." In her interrogatories to Dr. Reddy, however, Gavriiloglou defined them as "the process in which a third-party billing clearinghouse does not allow an electronic claim form to be submitted until an individual manually reviews and makes edits to submit a claim to any health insurance."

8

complaint about disability discrimination to both Human Resources and Dr. Reddy. Apparently it is undisputed that it was Sheila Reddy who told Gavriiloglou that she was terminated.

The arbitrator ordered the parties to meet and confer regarding a discovery plan, including the number of depositions to be taken.

Gavriiloglou wanted to take 15 depositions, including Dr. Reddy's. Prime objected that Dr. Reddy was an "'apex' witness" and Gavriiloglou had not shown good cause to depose him as such.

After a hearing, the arbitrator agreed that Dr. Reddy was an apex witness and that Gavriiloglou had not shown good cause to take his deposition. However, she allowed Gavriiloglou to serve 15 interrogatories on Dr. Reddy. Gavriiloglou did so, and Dr. Reddy responded. In his response, he testified that:

(1) He did not remember the substance of any conversation that he may have had with Wheeler about Gavriiloglou.

(2) He did not remember Gavriiloglou ever complaining to him about bridge routines.

(3) Gavriiloglou sent an email to Hazel Ganay complaining about Sheila Reddy, with a copy to Dr. Reddy. He forwarded it to Human Resources. He understood that Ganay followed up with Gavriiloglou.

(4) His only involvement in the decision to terminate Gavriiloglou was "deferring to" Sheila Reddy's termination decision. This occurred during a meeting with Sheila Reddy. He did not remember anything else about the meeting.

Based on Dr. Reddy's responses, Gavriiloglou filed a motion to compel his deposition. The arbitrator denied the motion, finding again that Gavriiloglou had not shown good cause to take his deposition.

Prime filed a motion in limine to preclude Gavriiloglou from calling Dr. Reddy to testify at the arbitration hearing. The arbitrator granted the motion. Thus, Dr. Reddy did not testify in the arbitration, either in person or by deposition.

b.     *Discussion.*

An arbitration award may be vacated if "[t]he rights of the party were substantially prejudiced . . . by the refusal of the arbitrators to hear evidence material to the controversy . . . ." (Code Civ. Proc., § 1286.2, subd (a)(5).)

"[V]acation of an award for 'refusal . . . to hear evidence material to the controversy' (§ 1286.2, subd. (a)(5)) must rest on more than a simple error in applying the rules of evidence. . . . The provision . . . was designed as a 'safety valve in private arbitration that permits a court to intercede when an arbitrator has prevented a party from fairly presenting its case.' [Citation.] It comes into play, for example, when an arbitrator, without justification, permits only one side to present evidence on a disputed material issue. [Citation.]" (*Heimlich v. Shivji* (2019) 7 Cal.5th 350, 368-369.)

10

"[W]hen a plaintiff seeks to depose a corporate president or other official at the highest level of corporate management, and that official moves for a protective order to prohibit the deposition, the trial court should first determine whether the plaintiff has shown good cause that the official has unique or superior personal knowledge of discoverable information. If not, as will presumably often be the case in the instance of a large national or international corporation, the trial court should issue [a] protective order and first require the plaintiff to obtain the necessary discovery through less-intrusive methods. These would include interrogatories directed to the high-level official to explore the state of his or her knowledge or involvement in plaintiff's case; the deposition of lower-level employees with appropriate knowledge and involvement in the subject matter of the litigation; and the organizational deposition of the corporation itself, which will require the corporation to produce for deposition the most qualified officer or employee to testify on its behalf as to the specified matters to be raised at the deposition. [Citation.] Should these avenues be exhausted, and the plaintiff make a colorable showing of good cause that the high-level official possesses necessary information to the case, the trial court may then lift the protective order and allow the deposition to proceed." (*Liberty Mutual Ins. Co. v. Superior Court* (1992) 10 Cal.App.4th 1282, 1289.) These rules apply even when the deponent is a party. (See *Nagle v. Superior Court* (1994) 28 Cal.App.4th 1465, 1468.)

Gavriiloglou does not dispute that Dr. Reddy was such a high-level official. It follows that the arbitrator properly restricted Gavriiloglou to serving interrogatories on

him. She has not shown that she was unable to obtain equivalent information through "the deposition of lower-level employees" or "the organizational deposition of the corporation itself." Because she failed to "exhaust[]" these "avenues," she cannot complain that she was not allowed to depose Dr. Reddy.

Separately and alternatively, Gavriiloglou also failed to show that Dr. Reddy had information "necessary . . . to the case." She argues that "Dr. Reddy is a key witness to the presentation of Plaintiff's case because he had personal knowledge as to 'bridge routines,' promised bonuses, and the final termination discussion between h[im] and Sheila Reddy, the individual that allegedly made the decision to terminate Plaintiff. [Citation.]"

Dr. Reddy denied discussing bridge routines with Gavriiloglou. It would seem that other witnesses could have testified about what bridge routines are, whether they are legal, whether Gavriiloglou objected to them, and whether she was fired for objecting to them. Those witnesses would include Wheeler, with whom she allegedly discussed them, and Sheila Reddy, who made the decision to fire her.

Indeed, the arbitrator rejected Gavriiloglou's claims regarding bridge routines because — like Dr. Reddy — both Wheeler and Sheila Reddy did not remember discussing them with her, and also because the evidence showed that Gavriiloglou "continued to work on bridge routines regularly throughout the rest of her time at Prime." Thus, Gavriiloglou has not shown that Dr. Reddy's testimony about bridge routines was "necessary" or that it would have changed the outcome.

12

Similarly, Gavriiloglou alleged that Wheeler told her that Dr. Reddy had authorized a salary increase and a bonus for her, which were was never paid. She had the opportunity to examine Wheeler and Sheila Reddy on this topic. They testified that bonuses were discretionary and were never promised, and the arbitrator accepted this testimony.

Dr. Reddy conceded that he may have discussed Gavriiloglou with Wheeler, but if so, he did not remember the content of the discussion. Thus, again, it does not appear that his testimony was necessary or that it would have changed the outcome.

Finally, Dr. Reddy testified that he deferred to Sheila Reddy's decision to terminate Gavriiloglou and otherwise he had no recollection of the discussion. Accordingly, once again, Gavriiloglou has not shown that further testimony from Dr. Reddy on this topic would have changed the outcome.

In sum, Gavriiloglou has not shown that her rights were substantially prejudiced by the arbitrator's refusal to let her depose Dr. Reddy or call him to testify. It follows that the trial court properly refused to vacate the award on this ground.

III

THE EFFECT OF THE ARBITRATOR'S RULING ON THE PAGA CLAIM

Gavriiloglou contends that the trial court erred by ruling that the arbitration award barred her PAGA claim because:

(1) The arbitrator had no authority to decide the PAGA claim.

(2) This case is analogous to *Kim v. Reins International California, Inc.* (2020) 9 Cal.5th 73 (*Kim*), which held that an employee who has settled his or her individual Labor Code claims remains an "aggrieved employee" with standing to assert a PAGA claim.

(3) Issue preclusion did not apply because the arbitration was part of the same action as the litigation of the PAGA claim.

(4) Issue preclusion did not apply because Gavriiloglou was acting in different capacities in the arbitration and in the litigation of the PAGA claim.

We need not decide her first three contentions, because we conclude that the fourth is dispositive.

A.     *Legal Background.*

PAGA "empowers employees to sue on behalf of themselves and other aggrieved employees to recover civil penalties previously recoverable only by the Labor Commissioner . . . . [Citations.]" (*ZB, N.A. v. Superior Court* (2019) 8 Cal.5th 175, 185.) "Of the civil penalties recovered, 75 percent goes to the Labor and Workforce Development Agency, leaving the remaining 25 percent for the 'aggrieved employees.' [Citation.]" (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 980-981, fn. omitted.)

"Only an 'aggrieved employee' has standing to bring a civil action under PAGA. [Citation.]" (*Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56, 74; see also Lab. Code, § 2699, subd. (a).) "Aggrieved employee" is defined as "any person who was

employed by the alleged violator and against whom one or more of the alleged violations was committed." (Lab. Code, § 2699, subd. (c).)

"All PAGA claims are 'representative' actions in the sense that they are brought on the state's behalf. The employee acts as "'the proxy or agent of the state's labor law enforcement agencies'" and "'represents the same legal right and interest as'" those agencies — "'namely, recovery of civil penalties that otherwise would have been assessed and collected by the Labor Workforce Development Agency.'" [Citation.]" (*ZB, N.A. v. Superior Court*, *supra*, 8 Cal.5th at p. 185.)

B.    *Issue Preclusion Where the Plaintiff Is Acting in Different Capacities.*

As mentioned, Gavriiloglou contends that issue preclusion did not apply because she was acting in different capacities in the arbitration and in the litigation of the PAGA claim.

She did not raise this argument below. "'We have discretion, however, to address a pure question of law raised for the first time on appeal. [Citation.]' [Citation.]" (*Kaura v. Stabilis Fund II, LLC* (2018) 24 Cal.App.5th 420, 430.) This contention presents precisely such a question. Moreover, Prime has not objected based on her failure to raise the argument below; rather, it has responded to the argument on the merits. (See *Grabowski v. Kaiser Foundation Health Plan, Inc.* (2021) 64 Cal.App.5th 67, 75, fn. 3 [court considered new issue on appeal where facts were undisputed and respondent had not objected].)

"The doctrine of res judicata has two aspects — claim preclusion and issue preclusion. [Citations.]" (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 727.) "Issue preclusion . . . 'applies only "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party."' [Citation.]" (*Grande v. Eisenhower Medical Center* (2022) 13 Cal.5th 313, 323, italics omitted.) An arbitration award can have issue preclusion effect. (*Sanchez v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398, 407; *Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1564.)

According to the Restatement (Second) of Judgments, section 36(2), "[a] party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity." This rule applies to both claim preclusion and issue preclusion. (*Id.*, com. a.) "With respect to issue preclusion, a party appearing in successive actions . . . is not precluded where the capacities in which he participated are different." (*Ibid.*)[3]

---

[3] Gavriiloglou argues that issue preclusion is not involved here at all, because the arbitration and any further court proceedings are part of a single action. Even if so, there is a similar preclusion rule that does apply within a single action. "'Issues adjudicated in earlier phases of a bifurcated trial are binding in later phases of that trial and need not be relitigated. [Citations.] No other rule is possible, or bifurcation of trial issues would create duplication, thus subverting the procedure's goal of efficiency. [Citation.] "[D]uplication of effort is the very opposite of the purpose of bifurcated trials."' [Citations.]" (*Orange County Water Dist. v. Alcoa Global Fasteners, Inc.* (2017) 12 Cal.App.5th 252, 359; accord, *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229,

California follows this rule. For purposes of both issue preclusion and claim preclusion, "'[i]dentity of parties means not only that they must be identical in person, but that the capacity in which they appear must be the same. A judgment for or against a party in one right or capacity cannot affect him when acting in another right or capacity.' [Citation.]" (*Holman v. Santa Cruz County* (1949) 91 Cal.App.2d 502, 513; e.g., *Meldrim v. Board of Supervisors* (1976) 57 Cal.App.3d 341, 346; *Travis Glass Co. v. Ibbetson* (1921) 186 Cal. 724, 729-730; see also Code Civ. Proc., § 1908, subd. (a)(2) [judgment is conclusive between the parties when "litigating . . . in the same capacity"].)

California does recognize one exception: "'Where a party though appearing in two suits in different capacities is in fact litigating the same right, the judgment in one estops him in the other.' [Citations.]" (*Bernhard v. Bank of America Nat. Trust & Savings Assn.* (1942) 19 Cal.2d 807, 814.) Here, however, Gavriiloglou is not litigating the same right.

"In a lawsuit brought under [PAGA], the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies — namely, recovery of civil penalties that otherwise would have been assessed and collected by the Labor Workforce Development Agency. [Citation.]" (*Arias v. Superior Court*, *supra*, 46 Cal.4th at p. 986.) "[Individual] employees do not own a personal claim for PAGA civil penalties [citation], and whatever personal claims [individual] employees might have for

_____

1244; *Arntz Contracting Co. v. St. Paul Fire & Marine Ins. Co.* (1996) 47 Cal.App.4th 464, 487.)

17

relief are not at stake [citation]." (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 547, fn. 4.) Thus, in the arbitration, Gavriiloglou was litigating her own individual right to damages for Labor Code violations, whereas in the present PAGA action, she is litigating the state's right to statutory penalties for Labor Code violations. It follows that the arbitrator's findings cannot have preclusive effect.

Recently, *Howitson v. Evans Hotels, LLC* (2022) 81 Cal.App.5th 475 came to a similar conclusion, albeit in the context of claim preclusion. There, Howitson filed an action against her former employer, asserting Labor Code and unfair competition claims, individually and as a representative of a putative class, but not a PAGA claim. (*Id.* at p. 482.) That action was settled, and the trial court entered judgment for Howitson. (*Ibid.*) Howitson then filed a new action against the employer, asserting a PAGA claim "'based on the same factual predicates'" as her first lawsuit. (*Ibid.*)

The appellate court held that "claim preclusion does not apply because the parties in the two lawsuits are not the same. [Citation.] In the First Lawsuit, Howitson was the real party in interest, as she as an individual and class representative sought damages against Evans Hotels for purported Labor Code violations to the employees. [Citation.] [¶] However, in the Second Lawsuit, the state is the real party in interest. [Citations.] Although the Legislature gave Howitson, an 'aggrieved employee,' standing to act as a representative in the Second Lawsuit, she is not the real party in interest in that suit. [Citations.]" (*Howitson v. Evans Hotels, LLC*, *supra*, 81 Cal.App.5th at pp. 488-489.) It

18

also held that the state was not in privity with Howitson, "because the state had no interest in the subject matter of the First Lawsuit." (*Id*. at pp. 490-492.)

Finally, the appellate court held that the two actions were based on different primary rights. (*Howitson v. Evans Hotels, LLC*, *supra*, 81 Cal.App.5th at pp. 487-488.) "In the First Lawsuit, the harm suffered was to Howitson individually and to a putative class of former or current employees of Evans Hotel, for purported Labor Code violations to the *employees* themselves in which compensatory damages were sought. [Citation.] However, in the Second Lawsuit, the harm suffered for such violations is to the state and the general public, in which civil penalties are assessed even if there is no injury to the employees themselves. [Citations.]" (*Id*. at p. 487.)

Prime argues that "the 'same right,' for purposes of issue preclusion, is not equivalent to the 'same primary right,' a concept relevant only to claim preclusion . . . ." (Italics omitted.) That is not entirely correct; the "same right" is relevant to whether *either* claim preclusion *or* issue preclusion applies against a party who is litigating in a different capacity. (*Bernhard v. Bank of America Nat. Trust & Savings Assn.*, *supra*, 19 Cal.2d at p. 814 [issue preclusion]; *Hardware Mut. Ins. Co. of Minn. v. Valentine* (1953) 119 Cal.App.2d 125, 131 [claim preclusion].) However, we need not decide this point. The *reasoning* in *Howitson* was that the first lawsuit was based on the harm to individual employees, whereas the second lawsuit was based on the harm to the state and the general public. This leads to the conclusion, not only that they were not based on the same

primary right, but also that they were not based on the same right at all. The same reasoning applies to the individual arbitration and the PAGA litigation here.

We therefore conclude that the trial court erred by granting judgment on the pleadings based on issue preclusion.

IV

DISPOSITION

The judgment is reversed. Gavriiloglou is awarded costs on appeal against Prime.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

SLOUGH
J.

FIELDS
J.